**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **vs.** | : | **CRIMINAL NO. 08-85** |
| | : | |
| **MICUS GOLSON,** | : | |
| **Defendant.** | : | |

**MEMORANDUM AND ORDER**

**RUFE, J.**                                              **January 13, 2009**

### I. INTRODUCTION

In a two-count indictment, the government charges Defendant Micus Golson with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and possession of marijuana, in violation of 21 U.S.C. § 844(a).  The charges stem from an incident that occurred on July 13, 2008, in Norristown, Pennsylvania, in which Sergeant Robert Sobeck of the Norristown Police Department, believing upon observation that Golson was smoking a cigar filled with marijuana ("blunt") and concealing a handgun in his waistband, radioed Montgomery County Drug Task Force officers who arrested Golson after a brief foot chase.  The Task Force officers also detained for some period of time two other men, Tyrone Barron and John Hunter, who Sobeck had observed standing near Golson while he smoked.  Presently before the Court are three Motions in Limine filed by Golson: a Motion to admit evidence of prior bad acts of Sergeant Sobeck;[1] a Motion to exclude evidence of Golson's prior convictions;[2] and, a Motion to

---

[1] Doc. No. 21 ("Sobeck Mot.").

[2] Doc. No. 22.

admit evidence of prior crimes of John Hunter.[3]  The parties briefed the Motions,[4] and the Court heard oral argument thereon on December 23, 2008.  The Motions are now ready for disposition.

## II.  DISCUSSION

The Court will consider the Motions in turn below, reciting additional relevant background facts as necessary.

### A.  Motion In Limine To Admit Prior Bad Acts of Sergeant Robert Sobeck

This Motion is premised on Golson's theory that Sergeant Sobeck "could not have observed [Golson] smoking marijuana or possessing a firearm," because, as Golson contends, he was doing neither on the evening in question, and is innocent of the offenses charged.[5]

The relevant facts from the evening of Golson's arrest are few.  Sobeck claims to have observed Golson from a concealed position approximately fifteen feet from where Golson stood on the sidewalk near the corner of Haws and West Main Streets in Norristown.  Sobeck claims he saw a bulge on Golson's hip under his shirt consistent, in Sobeck's experience, with the appearance of a concealed handgun in a waistband, and that he saw Golson smoking a cigar that Sobeck believed to be filled with marijuana.  On the basis of these observations, Sobeck made the radio call that directly resulted in Golson's arrest.

Golson contends certain alleged facts related to an incident in 1989 involving Sergeant Sobeck are also relevant.  It is these facts that are the subject of the instant "prior bad acts" Motion.  In particular, Golson asserts that on December 29, 1989, Sergeant Sobeck

---

[3] Doc. No. 28.

[4] See Motions with legal memoranda, Doc. Nos. 21, 22, and 28, and Government Responses in opposition, Doc. Nos. 43, 44, and 49.

[5] Sobeck Mot. at 4.

erroneously stopped a father and son and accused them of selling drugs after observing them exchange cash on the street.  The exchange proved to be legal in all respects.  Sobeck was eventually told by a superior officer that he had overreacted to what he had observed, and that he had not followed proper procedure in stopping the men ("the 1989 Incident").  Golson argues evidence of the 1989 Incident should be admitted to "provide insight into how Sgt. Sobeck interacts with citizens on the street."[6]

Golson argues evidence of the 1989 Incident is admissible pursuant to a "subspecies" of the Federal Rules of Evidence known as "reverse 404(b) evidence."[7]  Federal Rule of Evidence 404(b) provides, in part, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."[8]  Evidence sought to be used for this improper purpose is considered "propensity" evidence, and is strictly inadmissible under the Rule no matter which party offers it.[9]  Rule 404(b) continues, in relevant part, "[evidence of other crimes, wrongs, or acts] may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[10]  As a general matter, to be admissible, evidence satisfying the Rule 404(b) standard must also be relevant under Federal Rule of Evidence 401,[11] and not

---

[6] Id.

[7] See United States v. Stevens, 935 F.2d 1380, 1383 (3d Cir. 1991).

[8] Fed. R. Evid. 404(b) (2006).

[9] United States v. Williams, 458 F.3d 312, 315-16 (3d Cir. 2006).

[10] Fed. R. Evid. 404(b).

[11] Rule 401 provides, "'[r]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (2006).

otherwise excludable in light of the considerations set forth in Federal Rule of Evidence 403.[12]

Such "reverse 404(b)" evidence may be admitted against a third party witness if it satisfies certain requirements.  First, the evidence must be relevant to the guilt or innocence of the accused.  Next, the district court must be satisfied that the probative value of the evidence is not substantially outweighed by any of the negative considerations set forth in Rule 403, including causing confusion of the issues and misleading the jury.[13]  Finally, as noted above, reverse 404(b) evidence offered by a defendant against a third party is not admissible if it constitutes mere propensity evidence – evidence, in the language of the Rule, meant "to prove the character of a person in order to show action in conformity therewith."[14]  Rather, such evidence must be offered for one of the permissible purposes enumerated in Rule 404(b).[15]

Here, Golson asks the Court to admit evidence of the 1989 Incident in order to "provide insight into how Sgt. Sobeck interacts with citizens on the street."[16]  Golson would seek to undermine Sobeck's credibility in his testimony regarding the circumstances leading to Golson's arrest with evidence of the nineteen-year-old, apparently groundless stop.  This evidence is, at best, barely relevant to Sobeck's conduct as a surveillance agent in the present matter.  It may tend slightly to negate Golson's guilt as shown through Sobeck's testimony. However, the Court puts that question, as well as the balancing test of Rule 403, to one side,

---

[12] Rule 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

[13] Stevens, 935 F.2d at 1404-05.

[14] Fed. R. Evid. 404(b).

[15] Williams, 458 F.3d at 317.

[16] Sobeck Mot. at 4.

because the evidence of the 1989 Incident is plainly inadmissible propensity evidence. The evidence is offered not for any permissible purpose under Rule 404(b) – not to shed light on Sobeck's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"[17] – but to show that Sobeck made an error in judgment and discernment when policing in the distant past, and therefore may have done so again with respect to Golson. This is classic propensity evidence and will not be admitted. Golson's Motion in Limine with respect to the prior bad acts of Sergeant Sobeck will be denied.

### B.  Motion In Limine To Admit Prior Convictions of John Hunter

This Motion is premised on Golson's theory that he is innocent of the present firearms charge because another man, John Hunter, possessed and threw the weapon referred to in the charged offense. Golson argues that Hunter's criminal history, which includes convictions for a firearms offense committed near the area of Golson's arrest, should be admitted to support Golson's defense theory.

Certain additional facts from the evening of Golson's arrest are relevant. According to the government, after Sergeant Sobeck alerted Drug Task Force officers to Golson's perceived illegal conduct, several police cars arrived at the scene. Officers Leeds and Schurr emerged from one police vehicle. As they did so, John Hunter, who was standing several feet south of Golson on Haws Avenue, started to walk on the sidewalk toward Leeds. Leeds ordered Hunter to the ground. Hunter complied. Leeds then observed Golson running toward him on the sidewalk. Leeds drew his gun. Leeds saw the running Golson pull a black handgun from his waistband with his right hand and toss it to his right. The gun struck a wall alongside

---

[17] Fed. R. Evid. 404(b).

the sidewalk and came to a rest at Leeds' feet.  It was later determined to be a .380 caliber Highpoint semi-automatic handgun.

Golson claims these allegations are false, and that it was Hunter who possessed the gun recovered by the officers.  He seeks by the instant Motion to use Hunter's criminal history in support of this defense.  Golson sets forth the following evidence of Hunter's criminal history.  Hunter was convicted of aggravated assault on December 4, 2003, upon a guilty plea ("Assault Conviction").  The charge stemmed from an incident on April 16, 2003, in which Hunter argued with another man, shot him in the thigh and then fled the scene.  The incident occurred within one mile of the intersection of Haws and West Main Streets in Norristown.

On January 28, 2005, Hunter was convicted of criminal attempt to possess a firearm, upon a guilty plea ("Firearm Conviction").  The conviction stemmed from an incident on April 9, 2004, involving a failed attempt by Hunter and his brother to buy a gun from a third individual, Charles Sease.  The men met at the corner of Haws and West Main Streets in Norristown, and proceeded at the 100 block of Stambridge Street, a quarter of a mile away, to complete the deal.  The failed gun purchase ended in a violent altercation, attracting Officer Benson of the Norristown police.  When he emerged from his vehicle at the scene of the fight, Benson saw Hunter's brother on the ground with Sease on top of him.  Benson observed John Hunter walk toward him, at which time he heard the sound of metal hitting the ground beneath a car alongside the two prone men.  Police later recovered a .380 caliber Beretta handgun from under the car.  Hunter told police that Sease had thrown the gun under the car.[18]

Hunter also has three prior convictions for drug offenses stemming from two

_____

[18] Hunter Mot. Ex. B at *8 - *9 (Affidavit of Probable Cause Prepared by Officer Joseph Benson).

separate incidents in 2002 and one in 2007 ("Drug Offenses").[19]  In two of these incidents,

Hunter fled from police before being apprehended and arrested.  All three incidents occurred in

Norristown.

Golson argues evidence of Hunter's criminal history "is admissible because it is

relevant, tends to show identity and is part of Mr. Golson's complete defense."[20]  He argues, in

other words, that evidence of Hunter's criminal history would support Golson's defense as to the

firearm charge that Hunter, not Golson, possessed the gun in question.  Golson asks the Court to

admit such evidence as "reverse 404(b) evidence."[21]

As noted previously, Federal Rule of Evidence 404(b) allows a court to admit

evidence of a person's "other crimes, wrongs, or acts" for certain enumerated purposes, "such as

proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of

mistake or accident."[22]  While ordinarily "other crimes" evidence under Rule 404(b) is employed

by the government against a defendant or other witness, under a recognized wrinkle to the Rule, a

defendant may also use such evidence against a third party in aid of his defense.  Regardless of

its proponent, however, such evidence is not admissible "to prove the character of a person in

---

[19] See Hunter Mot. Ex. C, Ex. D, Ex. E.

[20] Hunter Mot. at 4.  He also states that Hunter's prior convictions bear on Hunter's "opportunity" to have committed the crime, although this argument is not at all developed by Defendant in his brief, and was not pressed at oral argument.  The Court does not understand how Hunter's convictions bear on his opportunity to have committed the charged firearms offense in this case.  See Williams, 458 F.3d at 318 ("we fail to see how the prior conviction could supply [third party] with the "opportunity" to commit the crime for which [Defendant] is charged.  There was no evidence the [third party's] prior conviction involved the same gun, or even the same type of gun (which might imply that he had continued access to the type of gun in question)").  Here, there is no evidence that the same gun, or even the same make of gun, was involved in the charged offense and either of Hunter's prior firearms offenses.  As Golson does not seriously forward this argument, the Court will not address further it herein.

[21] See Stevens, 935 F.2d at 1383.

[22] Fed. R. Evid. 404(b).

order to show action in conformity therewith."[23]

Under the "identity" exception in Rule 404(b), a defendant may seek to show his innocence through evidence of "other crimes" committed by a third party that are similar to the crime presently charged, and thus permit the inference that the third party is guilty of the present offenses.  Such reverse 404(b) "other crimes" evidence is admissible to show identity if it tends to negate the guilt of the accused and the evidence's probative value is not substantially outweighed by the concerns enumerated in Rule 403.[24]  In the first step of this analysis, relevance is measured according to the similarity of the third party's "other crimes" and the crime presently at issue.[25]  Pertinent factors or indicia of similarity include the particular location of the crimes, the type of crimes and particular fashion in which they were committed, and their temporal proximity.[26]  In contrast, generic or non-distinct prior crimes may not prove identity.[27]

Golson seeks to support his claim that Hunter possessed the firearm in the charged offense with evidence of Hunter's prior convictions.  Golson argues that, taken together, Hunter's convictions evince criminal conduct similar to the firearm offense charged because they involve firearms, flight from police and throwing a .380 caliber handgun to the ground, and

---

[23] Id..  See also Williams, 458 F.3d at 315-16.

[24] Stevens, 935 F.2d at 1404-05 ("[it is] well established that a defendant may use similar 'other crimes' evidence defensively if in reason it tends, alone or with other evidence, to negate his guilt of the crime charged against him").

[25] Id. at 1401.

[26] Id. ("other crimes" evidence related to third party tended to negate defendant's guilt of charged offense where the crimes in question shared "significant" similarities of precise location, type of crime, use of firearm, time of day when perpetrated, military status of targeted victims, race and description of perpetrator).

[27] See Williams, 458 F.3d at 318-19 (in a firearms crime case, "[t]he mere prior possession of a firearm [by a third party], without more, is not a distinctive act, and does not prove identity").

because they occurred near the area of Norristown in which Golson was arrested.

    The Court finds Hunter's criminal history to be minimally relevant to this case, if at all.  Evidence of Hunter's flight from police in prior instances is irrelevant to this case because there is no evidence or allegation that Hunter fled or attempted to flee from the police on July 13, 2007.  There are only allegations that Golson fled.  Likewise, Hunter's conviction for illegally attempting to purchase a firearm is barely relevant, despite the fact that a .380 caliber handgun was recovered at the scene of Hunter's arrest – the same caliber of handgun in the instant case.  The documentation from Hunter's arrest does not show that Hunter actually purchased, possessed or used the .380 caliber gun before the altercation with Sease erupted.  Nor does it show that Hunter threw the gun under the car when the police arrived.  The fact that a person of uncertain identity threw a .380 caliber handgun to the ground around the time of Hunter's arrest has no demonstrable connection to Hunter's conviction for criminal attempt to possess a firearm.  With respect to the type of crime involved, Hunter's firearm conviction is similar to the firearm offense presently charged only in the generic sense that both offenses involve firearms.[28]  The same may be said of Hunter's assault conviction involving use of a firearm.  Also, the fact that some of Hunter's crimes took place within approximately one mile of the intersection of Haws and West Main Streets in the city of Norristown is insufficiently distinctive, in the geographical or locational sense, to bear on identity.  Because Hunter's criminal history is at best minimally relevant to this case, whatever extremely limited probative value it might provide would be

---

[28] See id.  In the regard, the Court also acknowledges the government's unrebutted argument that ".380 caliber handguns rank among the most commonly used weapons in the United States," which further renders the fact that the gun involved in Hunter's prior crime was a .380 caliber handgun unremarkable.  Resp. To Hunter Mot. at 4-5 (citation omitted).

substantially outweighed by the risk of confusion of the issues.[29]  As such, the evidence must be excluded on Rule 403 grounds, and this Motion will be denied.[30]

### C.  Motion In Limine To Exclude Evidence of Golson's Prior Convictions

In this Motion, Golson seeks to bar the admission of evidence of his criminal history to impeach him, should he choose to testify.  When admitted, such evidence is usually confined to basic information regarding any prior convictions, for example their number, nature and date.[31]

Golson's criminal history consists of June 11, 2003 convictions, upon guilty pleas, for robbery, simple and aggravated assault, receiving stolen property, terroristic threats, reckless endangerment of another person, carrying a firearm without a license, possessing instruments of crime, and criminal conspiracy, all in violation of Pennsylvania law.  The convictions stemmed from two separate underlying armed robberies,[32] each carried out by Golson and at least one accomplice, and each involving use of a handgun.  Subsequently, Golson was sentenced for the convictions to two concurrent state terms of imprisonment of five to ten years.

---

[29] Id.; Fed. R. Evid. 403.

[30] Golson additionally argues that he should be permitted to offer evidence of Hunter's convictions because they comprise part of his "complete defense."  He cites in support the United States Supreme Court case Holmes v. South Carolina, in which the Court held, "constitutional rights are violated by an evidence rule under which the defendant may not introduce proof of third-party guilt if the prosecution has introduced forensic evidence that, if believed, strongly supports a guilty verdict."  547 U.S. 319, 321 (2006).  The Court thus reversed a ruling of the South Carolina Supreme Court affirming a trial court decision to exclude substantial evidence of Defendant Holmes' innocence because it found it "could not overcome the forensic evidence against him," which included DNA evidence.  This case is distinguishable from Holmes in numerous respects.  Perhaps chief among them, this case involves no forensic evidence of the sort referred to by the Supreme Court in its holding.  Moreover, this Court does not rule that Golson is prohibited from testifying or adducing other evidence that Hunter, not he, possessed the firearm in this case.  The Court holds only that he may not use Hunter's minimally relevant criminal history to do so.

[31] See United States v. Faulk, 53 Fed. Appx. 644 (3d Cir. 2002) (unpublished opinion).

[32] The first underlying robbery occurred on August 23, 2001, in Norristown Pennsylvania.  The second occurred on September 4, 2001, also in Norristown.

Golson invokes Federal Rule of Evidence 609 in support of his Motion.  In

relevant part, Rule 609 provides, " [f]or the purpose of attacking the character for truthfulness of

a witness, . . . evidence that an accused has been convicted of [a crime punishable by

imprisonment in excess of one year under applicable law] shall be admitted if the court

determines that the probative value of admitting this evidence outweighs its prejudicial effect to

the accused."[33]

The Court considers four non-exclusive factors to determine whether the

probative value of evidence of Golson's convictions would outweigh its prejudicial effect: "(1)

the kind of crime involved; (2) when the conviction occurred; (3) the importance of the witness's

testimony to the case; [and,] (4) the importance of the credibility of the defendant" (the "Bedford

Factors").[34]  The relative significance to be attached to each factor and any other relevant

consideration may be determined by the Court in a manner sensitive to the circumstances of the

case.

As for the first factor, the Court primarily considers the crimes of conviction.

---

[33] Fed. R. Evid. 609(a)(1) (2006).  In his brief, Golson spends equal time on arguments that his prior convictions are not admissible under Rule 609(a)(1), seen above, nor Rule 609(a)(2), which provides that crimes involving elements of dishonesty or false statements (crimen falsi), "shall be admitted regardless of the punishment." Fed. R. Evid. 609(a)(2).  Golson presents a forceful argument as to why his prior armed robbery convictions did not involve crimen falsi, relying, as a starting point, on the opinions of the Third Circuit Court of Appeals in Cree v. Hatcher, 969 F.2d 34, 36-37 (3d Cir. 1992) ("Rule 609(a)(2) must be interpreted narrowly to apply only to those crimes that . . . bear on a witness's propensity to testify truthfully"); Walker v. Horn, 385 F.3d 321, 331-34 (3d Cir. 2004) (because robbery "does not involve communicative or expressive dishonesty," robbery is not automatically a crimen falsi under Rule 609(a)(2)); and United States v. Johnson, 388 F.3d 96, 100 (3d Cir. 2004) (noting government concession that trial court erred in treating a defendant's prior theft conviction as a crimen falsi under Rule 609(a)(2)).  The government does not counter Golson's Rule 609(a)(2) arguments in its brief.  Moreover, it conceded at oral argument that it does not seek to admit evidence of Golson's convictions on crimen falsi grounds. Because the parties do not dispute the point, the Court will not consider whether Golson's criminal history involves crimen falsi, and thus should be admitted for impeachment purposes under Rule 609(a)(2).

[34] Government of the Virgin Islands v. Bedford, 671 F.2d 758, 761 n.4 (3d Cir. 1982).

Golson's convictions include numerous offenses, including robbery, aggravated assault,

terroristic threats and carrying a firearm without a license.  To date, the government has limited

its argument to contentions that Golson's armed robbery convictions should be admitted for

impeachment purposes, and has not addressed his other crimes of conviction, many of which

could be punishable by imprisonment in excess of one year under Pennsylvania law in

satisfaction of the requirement of Rule 609(a)(1).  Golson, meanwhile, has addressed each crime

for which he was previously convicted.  Because of the government's approach to the question,

the Court will limit its present analysis to whether Golson's robbery convictions should be

admissible to impeach him, should he testify.

The Third Circuit Court of Appeals has held that robbery does not inherently

involve "communicative or expressive dishonesty," as would render robbery convictions

automatically admissible as crimen falsi under Rule 609(a)(2).[35]  While robbery does not carry

the probative significance of a crimen falsi, it is nonetheless a crime that reflects on an

individual's veracity, as many courts have found.[36]

It bears noting that the robberies for which Golson was convicted each involved

use of a firearm.  In that connection, it is relevant to consider the charges Golson faces now, as

similarity between present charges and charges of conviction may militate against admitting

---

[35] Walker, 385 F.3d at 334.

[36] See, e.g., United States v. Alexander, 48 F.3d 1477, 1488 (9th Cir. 1995) ("prior convictions for robbery are probative of veracity"); United States v. Smith, 10 F.3d 724, 727 (10th Cir. 1993) (affirming same concept); United States v. Moore, 917 F.2d 215, 235 (6th Cir. 1990) (same); United States v. Washington, 746 F.2d 104 (2d Cir. 1984) (same); United States v. Grandmont, 680 F.2d 867 (1st Cir. 1982) (same).

convictions under Rule 609.[37]  Golson is currently charged with being a felon in possession of a firearm and possession of marijuana.  The marijuana charge is dissimilar to Golson's convictions, but the firearms charge is not.  The similarity is not overwhelming – gun possession is plainly a less serious crime than use of a firearm in the commission of a robbery – but it is significant nonetheless.  Irreducibly, gun possession is an essential ingredient of armed robbery involving a firearm.  Considered by a jury, the similarity of the offenses would result in certain prejudice to Golson.  However, because the similarity is somewhat limited, and because of the recognized relevance of robbery convictions to veracity, the Court must find that this <u>Bedford</u> factor militates slightly in favor of admissibility.

The Court next considers when Golson's prior convictions occurred.  The date of the convictions was June 11, 2003.  This date does not offend the provision set forth in Rule 609(b) generally excluding convictions older than ten years.[38]  Yet, it is over five and a half years prior to Golson's trial, wherein he may testify and the instant Rule 609 ruling may be implicated. The ten year time restriction set forth in Rule 609(b) reflects a general notion that the older a conviction, the less it may speak to the veracity of a witness.  The age of Golson's robbery convictions vitiates somewhat their probative value.[39]  Because Golson's convictions are not recent, the Court finds that this <u>Bedford</u> factor militates somewhat against their admission under Rule 609(a)(1).

---

[37] <u>See</u> <u>United States v. Sanders</u>, 964 F.2d 295, 297 (4th Cir. 1992) (noting that "evidence of similar offenses for impeachment purposes under Rule 609 should be admitted sparingly if at all").

[38] Fed. R. Evid. 609(b) (2006).

[39] <u>See</u> <u>United States v. Hart</u>, 1997 WL 634519, at *1-*2 (E.D. Pa. Oct. 15, 1997) (six and a half year old robbery conviction deemed remote in time in Rule 609(a)(1) analysis).

Finally, the Court considers the third <u>Bedford</u> factor, the importance of Golson's testimony to the case, in conjunction with the fourth <u>Bedford</u> factor, regarding the importance of Golson's credibility.  It cannot be gainsaid that if Golson testifies, his testimony will be important.  Golson may be the only witness to relate his alternative account of the circumstances leading to his arrest, in which he claims he possessed neither marijuana nor a firearm.  He is the only defense witness of which the Court is presently aware with personal knowledge of the events of the arrest.  In contrast, based on the pretrial memorandum supplied by the government and other filings,[40] it appears that the government's account will be presented by numerous police officers who allegedly played integral roles in the observation and arrest of Golson and the seizure of the gun and marijuana.  Thus, this is not a classic "he said - she said" scenario in which a lone witness on each side gives contradictory accounts, rendering every insight into the witnesses's credibility critical to the jury's ability to make basic factual determinations.  Instead, this case involves an array of government witnesses against Golson, all presenting reports contradicting Golson's account.  The credibility of any witness is important.  The Court cannot find, however, that Golson's credibility, should he choose to testify, would be of particular importance in this case such that his convictions should be admitted against him.  Indeed, the probative value of evidence of Golson's convictions to show his purported lack of veracity may not be significant for a jury that has already heard abundant contradictory government evidence which, if believed, necessarily reveals the same thing.  The Court therefore finds that these final <u>Bedford</u> factors militate against admitting Golson's convictions for impeachment purposes.

In sum, the first <u>Bedford</u> factor favors, slightly, the admissibility of Golson's

---

[40] <u>See</u>, <u>e.g.</u>, Gov't Response to Mot. to Suppress Physical Evidence at 1-5 [Doc. No. 18].

convictions, but the remaining factors weigh against it.  Accordingly, the Court does not find that the probative value of the convictions outweighs their prejudicial effect on Golson were he to testify, and Golson's Rule 609 Motion will be granted.[41]

## CONCLUSION

For the foregoing reasons, Golson's Motion in Limine to Admit Prior Bad Acts of Sergeant Robert Sobeck will be denied; Golson's Motion in limine to Exclude Evidence of his own Prior Convictions will be granted; and, Golson's Motion in Limine to Admit Prior Bad Acts of John Hunter will be denied.  An appropriate Order follows.

---

[41] The Court notes that it considers Golson's other potentially relevant, contemporaneous convictions, for example, for assault, to provide relatively less probative value than a conviction for robbery.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **vs.** | : | **CRIMINAL NO. 08-85** |
| | : | |
| **MICUS GOLSON,** | : | |
| **Defendant.** | : | |

## ORDER

  **AND NOW**, this 13th day of January 2009, for the reasons set forth in the accompanying Memorandum, it is hereby **ORDERED** as follows:

  1. Defendant's Motion in Limine to Admit Evidence of Prior Bad Acts of Sergeant Robert Sobeck [Doc. No. 21] is **DENIED**;

  2. Defendant's Motion in Limine to Exclude Evidence of Prior Convictions Pursuant to Fed. R. Evid. 609 [Doc. No. 22] is **GRANTED**;

  3. Defendant's Motion in Limine to Admit Evidence of Prior Bad Acts of John Hunter [Doc. No. 28] is **DENIED**.

  It is so **ORDERED**.

        **BY THE COURT:**

        /s/ Cynthia M. Rufe

        _____

        **CYNTHIA M. RUFE, J.**